IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| RANI E. MIMS, | * |
| | * |
| Plaintiff, | * |
| | *   Civil No. TMD 16-2813 |
| v. | * |
| | * |
| | * |
| NANCY A. BERRYHILL, | * |
| Acting Commissioner of Social Security, | * |
| | * |
| Defendant.[1] | * |

************

**MEMORANDUM OPINION GRANTING PLAINTIFF'S
<u>ALTERNATIVE MOTION FOR REMAND</u>**

Plaintiff Rani E. Mims seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment and alternative motion for remand (ECF No. 13), Defendant's Motion for Summary Judgment (ECF No. 16), and Plaintiff's "Reply Brief" (ECF No. 19).[2] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled. No hearing

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. She is, therefore, substituted as Defendant in this matter. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

is necessary. L.R. 105.6. For the reasons that follow, Plaintiff's alternative motion for remand (ECF No. 13) is **GRANTED**.

I

## Background

Plaintiff was born in 1970, has a college education, and previously worked as a flight attendant, computer security specialist, and user support specialist. R. at 29, 193. Plaintiff protectively filed an application for DIB on May 28, 2015, alleging disability beginning on January 1, 2013, due to adjustment disorder, depressive disorder, sleep disorder, radiculopathy, and degenerative joint disease. R. at 19, 158-59, 192. The Commissioner denied Plaintiff's application initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. at 67-99, 104, 108-11. On February 16, 2016, ALJ Francine L. Applewhite held a hearing in Washington, D.C., at which Plaintiff and a vocational expert ("VE") testified. R. at 36-66. On March 30, 2016, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of disability of January 1, 2013, through the date of the decision. R. at 16-35. Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on June 23, 2016. R. at 1-6, 2495-2511. The ALJ's decision thus became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On August 9, 2016, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. After the parties consented, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case then was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

# II

## Summary of Evidence

### A. Plaintiff's Disability Rating from the Department of Veterans Affairs

On May 19, 2015, the Department of Veterans Affairs (the "VA") found Plaintiff's overall or combined disability rating to be 90%, effective January 1, 2013. R. at 187. The VA found Plaintiff to be "[t]otally disabled as a result of a service-connected disability and the inability to secure or follow a substantially gainful occupation, evaluated at 100%," effective January 8, 2015. R. at 181; *see* R. at 187. The VA found Plaintiff to be entitled to individual unemployability effective January 1, 2013, because she was "unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities." R. at 185; *see* 38 C.F.R. § 4.16(a).

### B. State Agency Medical Consultants

On July 22, 2015, a state agency consultant, A. Serpick, M.D., assessed Plaintiff's physical residual functional capacity ("RFC"). R. at 73-74. Dr. Serpick opined that Plaintiff could (1) lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. R. at 73. Dr. Serpick further opined that, although she only occasionally could climb ladders, ropes, and scaffolds, Plaintiff had no manipulative, visual, communicative, or environmental limitations. R. at 74.

On July 29, 2015, a state agency consultant, D. Walcutt, Ph.D., using the psychiatric review technique ("PRT") under 20 C.F.R. § 404.1520a, evaluated Plaintiff's mental impairments under Listings 12.04 and 12.06 relating to affective disorders and anxiety-related disorders (R. at 71-72). *See* 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 12.04, 12.06. Dr. Walcutt

opined that, under paragraph B of the applicable listing, Plaintiff's mental impairments caused her to experience (1) mild restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) one or two repeated episodes of decompensation of extended duration. R. at 71. Dr. Walcutt did not find evidence to establish the presence of the criteria under paragraph C of the applicable listing. R. at 72. Dr. Walcutt thus assessed Plaintiff's mental RFC (R. at 74-76) and opined that she was moderately limited in her ability to (1) maintain attention and concentration for extended periods; (2) work in coordination with or in proximity to others without being distracted by them; (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (4) accept instructions and to respond appropriately to criticism from supervisors; (5) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and to (6) respond appropriately to changes in the work setting. Plaintiff otherwise was not significantly limited. R. at 75-76.

In assessing Plaintiff's mental RFC, Dr. Walcutt opined:

[Plaintiff] functions in a generally independent fashion and can meet various personal needs from a mental standpoint. [Plaintiff] is capable of completing daily living functions within the constraints of mental and cognitive status. This individual manages within a basic routine. A/C fluctuates at times due to the effects of the conditions. [Plaintiff] appears to have the ability to interact and relate with others socially. [Plaintiff] can adequately negotiate in the general community. [Plaintiff] retains the capacity to perform simple tasks from a mental health perspective.

R. at 76.

On November 4, 2015, another state agency consultant, Janet Anguas-Keiter, Psy.D., again used the PRT to evaluate Plaintiff's mental impairments under Listings 12.04 and 12.06.

R. at 86-87. Dr. Anguas-Keiter opined that, under paragraph B of the applicable listing, Plaintiff's mental impairments caused her to experience (1) mild restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) one or two episodes of decompensation of extended duration. R. at 86. The consultant did not find evidence to establish the presence of the criteria under paragraph C of the applicable listing. R. at 86. Dr. Anguas-Keiter ultimately affirmed Dr. Walcutt's assessment of Plaintiff's mental RFC. R. at 89-92.

On November 9, 2015, another state agency consultant, W. Hakkarinen, M.D., again assessed Plaintiff's physical RFC. R. at 88-89. Dr. Hakkarinen opined that Plaintiff could (1) lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. R. at 88. Dr. Hakkarinen also opined that, although she only occasionally could climb ladders, ropes, and scaffolds, Plaintiff had no manipulative, visual, communicative, or environmental limitations. R. at 89.

**C.     Plaintiff's Testimony**

The ALJ summarized Plaintiff's testimony in her decision:

In [Plaintiff's] testimony, she stated that she has severe social function limitations and her medical records support these assertions [R. at 1352-56, 1360-63, 1371-1924, 2194-2494]. However, . . . she has not always been compliant with prescribed medications [R. at 1352-56]. She noted that she attends psychological therapy only once every three months despite having paid healthcare and while she claimed to have severe social limitations, she admitted that she goes to her Synagogue every Saturday and to the gym every day. She further testified that her concentration is so limited that she could not watch a television program, but she drives a car and travels to distant places independently. Physically, she cited severe pain with lifting and postural maneuvers, but again, she exercises daily and has treated her pain symptoms very conservatively with physical therapy and medications. She also stated that despite her alleged physical limitations, she has recently vacationed in California, India, and Israel.

5

R. at 27-28; *see* R. at 42-60.

D.   **VE Testimony**

The VE testified that a hypothetical individual with the same age, education, and work experience as Plaintiff and with the RFC outlined below in Part III could not perform Plaintiff's past work but could perform the light jobs of inspector, housekeeper, or packer.[3]  R. at 62-64. Such an individual who would be able to remain on task only 95% of an eight-hour workday would remain able to perform these jobs.  R. at 64.  An individual who was off task 20% or more of an eight-hour workday could not perform any work, however.  R. at 64.  According to the VE, her testimony, with the exception of her testimony regarding the percentages of time off task, was consistent with the *Dictionary of Occupational Titles*.[4]  R. at 64.  A person absent from work two to three days per month would not be able to maintain work.  R. at 65.  A person requiring two additional breaks in the morning and two additional breaks in the afternoon would not be able to maintain work.  R. at 65.

### III

### Summary of ALJ's Decision

On March 30, 2016, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of January 1, 2013; and (2) had an

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).

[4] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs."  *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. § 404.1566(d)(1).  "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption."  *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

6

impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform her past relevant work; but (5) could perform other work in the national economy, such as an inspector, housekeeper, or packer. R. at 21-30. The ALJ thus found that she was not disabled from January 1, 2013, through the date of the decision. R. at 30.

In so finding, the ALJ found that Plaintiff had moderate difficulties with regard to concentration, persistence, or pace. R. at 22. "She cited problems with memory, completing tasks, concentration, understanding, following instructions, and handling stress or changes in routine in her function reports, but she also noted that she had no problems handling her personal finances, enjoyed reading, and could concentrate well enough to drive a car without issues[.]" R. at 22 (citing R. at 218-30, 240-52).

The ALJ then found that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except occasional climbing of ladders, ropes, scaffolds, stairs, or ramps; occasional stooping, crouching, crawling, or kneeling; work in a low stress job defined as occasional interaction with the public, co-workers, or supervisors and able to remain on task 95% or more of an eight-hour workday.

R. at 23.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the evidence for the reasons explained in this decision." R. at 24. The ALJ gave "little weight" to Plaintiff's 100% disability rating from the VA because "the ultimate issue of disability for the Social

Security Administration is reserved to the Commissioner," because disability determinations of other governmental agencies "are not entitled to any particular weight in determining disability for Social Security purposes," and because the "VA criteria differ from the Social Security Administration criteria in regards to what constitutes a finding of disability." R. at 28 (citing 20 C.F.R. § 404.1527(e); Social Security Ruling 06-3p).[5] R. at 28. The ALJ gave the opinions of the state agency psychological consultants "great weight" because they were consistent with the medical evidence. R. at 28.

IV

**Disability Determinations and Burden of Proof**

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

---

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

8

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[6]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled,

---

[6] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the

national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

V

### Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v.*

11

*Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Plaintiff contends that the ALJ's RFC assessment does not account for her moderate limitations in maintaining concentration, persistence, or pace. Pl.'s Mem. Supp. Mot. Summ. J. 8-11, ECF No. 13-1. Plaintiff further asserts that the ALJ erred in failing to evaluate her 100% service-connected disability and individual unemployability ratings. *Id.* at 3-8. Plaintiff also maintains that the ALJ erred in failing to evaluate properly the opinions of Plaintiff's treating sources. *Id.* at 11-22. Plaintiff finally argues that the ALJ erred in assessing her credibility. *Id.* at 22-23. As discussed below, because inadequacy of the ALJ's analysis frustrates meaningful review, the Court remands this case for further proceedings.

Social Security Ruling 96-8p explains how adjudicators should assess RFC and instructs that the RFC

> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted) (citations omitted). The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given

that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177). The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. *Id.* at 637; *see Monroe v. Colvin*, 826 F.3d 176, 187-88 (4th Cir. 2016) (remanding because ALJ erred in not determining claimant's RFC using function-by-function analysis; ALJ erroneously expressed claimant's RFC first and then concluded that limitations caused by claimant's impairments were consistent with that RFC).

The Fourth Circuit further held in *Mascio* that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). "[T]he ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The court in *Mascio* remanded the case for the ALJ to explain why the claimant's moderate limitation in concentration, persistence, or pace at step three did not translate into a limitation in the claimant's RFC. *Id.* In other words, "[p]ursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a

13

corresponding limitation in her RFC assessment, or explain why no such limitation is necessary." *Talmo v. Comm'r, Soc. Sec.*, Civil Case No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015), *report and recommendation adopted* (D. Md. June 5, 2015).

Here, the ALJ's hypothetical question to the VE and the corresponding RFC assessment limiting Plaintiff to "a low stress job defined as occasional interaction with the public, co-workers, or supervisors" (R. at 23; *see* R. at 62-63) do not account for Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace. *See Mascio*, 780 F.3d at 638; *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (per curiam) (rejecting contention that "the ALJ accounted for [the claimant's] limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public"). *But see Hillard v. Colvin*, Civil Action No. ADC-15-1442, 2016 WL 3042954, at *6 (D. Md. May 26, 2016) ("The ALJ additionally accounted for Plaintiff's limitation in concentration and persistence by restricting him to work 'without frequent interaction with co-workers or the public.'"); *Linares v. Colvin*, No. 5:14-CV-00120, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) ("The ALJ accounted for Plaintiff's limitation in pace by restricting her to 'nonproduction pace,' and he accounted for her limitation in concentration and persistence by restricting her to a stable work environment with only occasional public contact."). The ALJ's decision, moreover, fails to explain how, despite Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace, she would be able to "remain on task 95% or more of an eight-hour workday." R. at 23, 28. Remand under the fourth sentence of 42 U.S.C. § 405(g) is warranted here because it is unclear "how the ALJ reached that particular conclusion, and [it] is also unclear whether being off task only 5% of the workday is consistent with a 'moderate limitation in concentration, persistence or pace.'"

*Chandler v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-15-1408, 2016 WL 750549, at *2 (D. Md. Feb. 24, 2016). While "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision," *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)), "the ALJ 'must build an accurate and logical bridge from the evidence to [her] conclusion,'" which the ALJ did not do so here. *Monroe*, 826 F.3d at 189 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). An ALJ's failure to do so constitutes reversible error. *Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017). Because the inadequacy of the ALJ's analysis frustrates meaningful review, remand under the fourth sentence of 42 U.S.C. § 405(g) is appropriate. *See Mascio*, 780 F.3d at 636.

Plaintiff further contends that the ALJ erred by failing to evaluate her disability and unemployability ratings by the VA. Pl.'s Mem. Supp. Mot. Summ. J. 3-8, ECF No. 13-1. Although the ALJ gave "little weight" to the VA's disability rating (R. at 28), the Fourth Circuit recognizes that "both the VA and Social Security programs serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability." *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 343 (4th Cir. 2012) (citing *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002)). "Both programs evaluate a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis; both focus on analyzing a claimant's functional limitations; and both require claimants to present extensive medical documentation in support of their claims." *Id.* (quoting *McCartey*, 298 F.3d at 1076). "Because the purpose and evaluation methodology of both programs are closely related, a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency." *Id.* Thus, "in making a disability determination, the SSA must give

substantial weight to a VA disability rating," but "an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate." *Id.*

Here, other than citing § 404.1527(e) and Social Security Ruling 06-3p, the ALJ does not provide "persuasive, specific, valid reasons" for giving less weight to the VA's disability rating "that are supported by the record." *McCartey*, 298 F.3d at 1076; *see Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam) (ALJ must adequately explain valid reasons for not giving great weight to VA rating). "This is improper, and the Court finds that remand on this ground is also proper – particularly where the case is being remanded on other issues – so that the ALJ can fully consider the VA's ultimate finding that [Plaintiff] was 100% disabled." *Caincross v. Colvin*, No. 115CV01637JMSMPB, 2016 WL 3882024, at *7 (S.D. Ind. July 15, 2016). Further, the ALJ "neglected to address the VA's [total disability, individual unemployability] determination and its individualized assessment that [Plaintiff] was unable to secure or follow a course of substantial, gainful work due to that disability." *Lee v. Colvin*, No. 2:16CV61, 2016 WL 7404722, at *7 (E.D. Va. Nov. 29, 2016), *report and recommendation adopted*, No. 2:16-CV-61, 2016 WL 7404698 (E.D. Va. Dec. 21, 2016). The Court "cannot determine if findings are unsupported by substantial evidence unless the [Commissioner] explicitly indicates the weight given to all of the relevant evidence." *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984). Thus, "[i]n failing to consider the VA's [total disability, individual unemployability] determination, the ALJ committed a legal error and violated *Bird*'s requirement to attribute substantial weight to VA disability determinations or provide cogent reasons for declining to do so." *Lee*, 2016 WL 7404722, at *7. Because this error was not harmless, *see id.* at *8-9, remand is warranted on this ground as well, and the Court need not

16

address Plaintiff's remaining arguments.  *See Bird*, 699 F.3d at 342 n.3 (concluding that ALJ committed error of law and declining to address ALJ's credibility findings or likely weight of evidence on remand).

## VII

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 16) is **DENIED**.  Plaintiff's Motion for Summary Judgment (ECF No. 13) is **DENIED**.  Plaintiff's alternative motion for remand (ECF No. 13) is **GRANTED**.  Defendant's final decision is **REVERSED** under the fourth sentence of 42 U.S.C. § 405(g).  This matter is **REMANDED** for further proceedings consistent with this opinion.  A separate order will issue.

Date: August 28, 2017

/s/
Thomas M. DiGirolamo
United States Magistrate Judge